Case No. 23-5103, et al. State of New York, et al. v. Donald J. Trump in his official capacity as the President of the United States, et al., at balance. Ms. Neumeister, ready at balance. Mr. Acosta, ready at release. Good morning, counsel. Ms. Neumeister, please proceed when you're ready. Good morning, Your Honor. May it please the Court, McKay Neumeister on behalf of the federal government. I'd like to save two minutes for rebuttal. In providing for the Postal Service to operate more like a business, Congress expressly exempted its actions from review under the Administrative Procedure Act. As a result, district courts can only review Postal Service decisions for consistency with statutory requirements under the narrow strictures of ultraviarious review. Now, for some statutory requirements, Congress created a specialized review scheme, whereby parties file complaints in the Postal Regulatory Commission with direct review in this court. And where meaningful review of a statutory claim can be obtained through that scheme, its review is exclusive and ultraviarious claims cannot be brought in district court. The advisory opinion claim at issue here falls squarely within that specialized review scheme. By the time the district court resolved the claim in October 2022, meaningful review was available before the PRC in this court. Accordingly, a threshold requirement of ultraviarious review was not satisfied, and exclusive authority to hear the claim lay with the PRC. Can I ask you, there's two strands of doctrine that your submission draws upon. One is the preclusion of review because there's a mechanism set forth in the statute, and that ought to be exclusive. So that's kind of the Thunder Basin Exxon idea. And then there's the narrowness of ultraviarious review, and ultraviarious review is predicated on not being able to get review in some other way. What's the relationship between those two in the context of this case? Because they're both there. One of them, I think the Thunder Basin Exxon one is jurisdictional, I believe. You tell me what the government's view is on that. But then on the ultraviarious one, I'm not sure it goes to jurisdiction as much as it goes to whether you can have a successful ultraviarious claim, one that prevails at the end of the day. Tell me if that understanding is wrong. But if that understanding is right, then where does that leave us in terms of the relationship between those two strands in this particular case, and which path is the right one to go down? Or is there sequencing, or how exactly do they interrelate? We think those are two completely separate independent bases for reversing the district court judgment. And this court is able to address either of them without any particular required sequencing. And that's because whether there is an alternate scheme for review of a statutory claim in order to have equitable authority to hear an ultraviarious claim is the kind of non-merits threshold question that the court can determine without actually exercising the power to review the merits of a claim. And declare the law. It's very similar to what the Supreme Court held in the Sinekam case about forum non-convenience. There, forum non-convenience, is there another more proper forum? That was a threshold non-merits, non-jurisdictional determination. That could come before a jurisdictional question. Similarly here, the court would be saying that there is an alternate forum that is the proper forum for this claim. And the court can say that without touching on the merits. For ultraviarious, if I'm remembering right, there's three prongs to it. One of them is this one.  But then there's another one, which is how clearly, is it so clear that it's outside the statutory scope of authority that ultraviarious relief is warranted? That's one of them, too. I think that might be the third one.  Would it be then that some of them are threshold so that you can get to them first and some of them are not? Because that one doesn't seem so threshold, the last one. Because that just goes to the merits of how clearly is it outside the statutory authority. That might be one way the court wants to slice it, Your Honor. I will note that ultraviarious review is essentially the court's equitable authority. And the basis for the court exercising equitable authority over these extreme claims and these extreme circumstances. And so there's sort of a quasi-jurisdictional flavor of the court's power to act that is relevant in all these considerations. But we don't think the court has to specifically say whether the blatant violation, a clear statutory requirement prong of ultraviarious review itself is a threshold question. Because I think it's clear that the meaningful review prong that we're talking about is the kind of threshold determination that the court can address without raising the merits. And if we do that, if we look at the meaningful review prong under ultraviarious, would we basically write the same stuff that we would write if we looked at it via Thunder Basin Axon? Is there any difference between them or is it basically the exact same reasons that you would say it's precluded by Thunder Basin is also the reasons why the second prong of ultraviarious review is unmet? For purposes of this case, we think the analysis of those two questions is the same. It's possible that they might differ in certain respects in other circumstances. But here the question is whether there was meaningful review to exercise authority over these claims in October 2022. And either under Thunder Basin or under ultraviarious, the answer is that there was meaningful review. Congress established this specialized scheme to hear these claims. And the PRC could have afforded full meaningful review and relief on those claims at the time. Can I?  Oh, I had a follow-up question. We may have the same follow-up question. You said the question is whether meaningful review could be afforded in October 2022. Why isn't the question whether meaningful review could be afforded at the time they filed their lawsuit? I mean, some jurisdictional things we look at at the moment that the case is filed like standing. We don't look to see whether a plaintiff lost standing later. We might look at mootness or something later. But you seem to be saying that meaningful review, even if there wasn't meaningful review when the preliminary injunction was entered and the case was filed, there's an opportunity for it by the time the court granted summary judgment. What's your best authority that that's the way we should look at that? Yes, Your Honor. So, the question is, you know, both under Thunder Basin, which is jurisdictional and ultraviarious, which is a question of equity. Our argument is that regardless of whether what the court did was proper in 2020, it could not exercise this authority in 2022. And that's because the district court exercised authority in exigent circumstances at the height of a pandemic, where states had to administer these impending general elections in light of various public health restrictions. And that exigent circumstance is what led the court to conclude that there was no meaningful review at the time. Now, assuming that a factual predicate like that is a proper exception to PRC review, we're not taking a position on that, but assuming that that could be an exception to PRC review, that factual predicate had disappeared by October of 2022. And so, similar to other kinds of inquiries, mootness, ripeness, abstention doctrines, there are a number of different circumstances where the court looks at changing facts over the course of the case to determine whether the court lost authority to act. And specifically focusing on ultraviarious review, this is a question of the court's equitable authority to hear these claims in grant relief. This court has explained in the Federal Express case that the narrow purpose of these claims is to enjoin specific agency action that is an extreme error that requires the immediate intervention of an equity court. Now, that question, whether this is the kind of circumstance that rises to that level, that satisfies these very strict requirements and requires this immediate intervention hinges on the facts on the ground and whether equity is proper. Could you cite me to any authority that says, well, if you meet the Thunder Basin kind of factors at the time you filed a complaint, if two years later while your case is still pending, we reanalyze the Thunder Basin factors, and if we find that you don't meet all of them at that point, then your case is dismissed for lack of jurisdiction. I'm not specifically aware of a case that says that, Your Honor, but the court ultimately doesn't need to reach that. If the court isn't willing to assume that that scenario is proper, then it can not decide the Thunder Basin question and resolve this case on ultraviarious grounds. As I mentioned, it's a threshold question. Additionally, Your Honor, this court has said that questions of statutory jurisdiction, the Steel Coat Bar does not apply to them and that the court can assume statutory jurisdiction for purposes of deciding. So this is a question I have. So here the plaintiffs are proceeding under an equitable cause of action, ultraviarious review. The government is only challenging one part of that cause of action, which is whether there's a meaningful alternative. But I don't see anywhere in the government's brief that it's challenging another important aspect of ultraviarious review, which is that the government, you know, took an action entirely in excess of its delegated power or contrary to a specific statutory provision. So has the government waived that argument? Is that a waivable argument in the context of an equitable cause of action? I think this is actually quite a hard question because if the government, assuming for a moment that I disagree about the meaningful alternative, could we rule on this other part of ultraviarious review where the government hasn't even raised this argument? We haven't, Your Honor, because we are focused on a different prong for purposes of the appeal. We did contest that prong in district court and simply chose not to proceed with that argument before this court. I'm not sure if we have a position with respect to whether that's the kind of jurisdictional question that the court could reach out and resolve on its own. It's not jurisdictional. It goes to whether there is an equitable cause of action. Yes, Your Honor, and because this is equity. Which isn't jurisdictional. Right, but it is a question about whether the court fundamentally has the power to act here. And so, you know, if the court thought that that were the kind of question that even though the government has not pressed it, it could pursue sua sponte because it's a question of the court's fundamental authority. Do you think that we can pursue that sua sponte in a context like this for an equitable cause of action? I don't believe we've ever made that argument, Your Honor. I'm not prepared with a specific position on that, but I do want to also just emphasize that regardless of what the court thinks about the question of authority to act such that the judgment in the entirety is improper, it should be reversed. There's also the separate question of the fact that this permanent injunction on its own. So before we get to the injunction, why isn't it the case that if it goes to whether there's a cause of action, one thing we know from Steel Company is that the existence of a cause of action is a merits question. So if the existence of a cause of action is a merits question, then why can't one side just concede it? Like all merits questions, it just seems like you made a strategic choice, and it may be because you think actually you don't have a very good argument on whether there was a need to go before the Postal Review Commission. I don't know what the thinking is, but why wouldn't it be that with a cause of action, a party can just submit to whether there's a cause of action, and it's not something that a court looks behind once a party acquiesces it? That might be true, Your Honor, but I just want to highlight some of the differences between ultraviarious review and the fact that it is this equitable authority. That is my question, like whether our equitable jurisdiction turns on all the elements of the cause of action being met, which is different from a statutory cause of action. Yes, Your Honor, and this court has sometimes described ultraviarious review as the court's equitable jurisdiction. Non-statutory, we've called it non-statutory. Correct, and so whether or not the fact that this is non-statutory and goes to the court's exercise of its powers and equity, cashes out differently, is not something that we've specifically considered. I'm happy to file a letter or a supplemental briefing on that question if the court is interested in it. I couldn't find any cases talking about this. I have a question that I don't want to – it's along the same lines but pointing in the other direction, which is there's the question whether, as Judge Wilkins raised, this is something that you could take a fresh look at later on in the case depending on how it proceeds. And for these purposes, let's just assume that I'm thinking about this in ultraviarious terms rather than in Thunder Basin terms. So we're talking about it as a ultraviarious question. I don't think the other side – we can ask them, but I don't think the other side opposed in their briefing the way that you're looking at it, which is to say we're looking at it afresh based on 2022. As of 2022, there wasn't an exigency. So in 2022, there was this alternate route to go before the PRC should do that. The other side obviously opposes whether that was a viable alternate route. That, I think, is squarely in dispute. But I didn't read them to oppose whether this is an appropriate way of doing the analysis. I agree with that, Your Honor. I think their brief does not oppose that this is a correct question as what the facts were in 2022 and whether there was meaningful review in 2022. And so the court can assume that for purposes of this case. Well, that's the question because if that's – I think we could assume that if we can assume those kinds of things when we're trying to figure out whether there's an equitable action. I just don't know that the answer is all that different from the exchange that we were just having before because that would be an inclination is to say, well, this just isn't disputed right now, at least for ultraviarious purposes. For the Thunder Basin purposes, it may be that if it goes to jurisdiction, then maybe we have to independently look at it anyway, regardless of whether it's disputed. I'm not sure about that. But for ultraviarious purposes, one might say, well, for those purposes, that can be something that the other side doesn't contest, and therefore, we assume it for these purposes. I think for the purpose of resolving this case, because it's not a question of constitutional jurisdiction, it's fine for the court to assume that and then reverse the judgment on the basis that there was, in fact, meaningful alternate review available in 2022. Because the question of Thunder Basin is not a question of Article III jurisdiction. It's statutory jurisdiction, and the court is fine to assume issues with respect to statutory jurisdiction. But I do just want to highlight. But that's different. I mean, you're talking about the Thunder Basin route. I was talking about the ultraviarious route. Yes, and equitable authority, again, this is kind of murky with respect to the sense of which is jurisdictional. I'm not aware of an argument that it's jurisdictional as a constitutional matter. But, again, we're happy to address that further. You're right that we have cases that say – we have a couple of cases, I think, that say that you can assume statutory jurisdiction. I think there's been opinions even in our court that have called into question whether that line of cases, which I think consists of two, stands up. So I'm not sure that's the more propitious route as opposed to ultraviarious. Yes, and so the court is perfectly fine to just put that aside and decide ultraviarious because the specific question that we're presenting is a threshold question similar to form non-convenience. And you think on that one it wasn't the methodology of saying we can look at it in terms of what was reasonably available in 2022. That methodological move hasn't been contested. And so we can assume that and then ask whether the ultraviarious prong that is related to that is satisfied. Yes, Your Honor. We agree with that, that we don't read their brief to contest the fundamental framework of our argument. And in 2022, it was clear that by that point in time there was meaningful review before the PRC. And we know this – But how do we know that if – or what do we do with the district court made a finding that there wasn't meaningful review? The district court said, you know, at the time I entered the preliminary injunction, there wasn't meaningful review. And there's still not meaningful review today. At least that's the way I read the district court's summary judgment. So I read the district court's opinion slightly differently, Your Honor. I think the district court said the first half of that, that in 2022 there was no meaningful review. But I don't read the court to specifically say that on the ground – sorry, in 2020 there was no meaningful review. I don't read the court to say that in 2022, based on the facts on the ground at that time, there was no meaningful review. And I urge the court to look at the opinion. It's pages 380 to 81 and 391 where it's talking about this prong both under Thunder Basin and ultraviarious. Specifically under ultraviarious, that's 391. And all the court says is that because of the nature of plaintiff's claims and because of the impending election at the time they filed suit, there was no meaningful review. It's not making – the court wasn't making any findings about the facts on the ground in 2020. Nor could it have done so because the briefing was focused solely on what happened in 2020. The summary judgment briefing was completed by November 2nd, 2020. And so not only did the court, in our view, not make that holding, the record would not have supported it. And it would not be consistent with ultraviarious review. Because ultraviarious review is about enjoining a specific extreme agency action. And by October of 2022, those actions had been fully overcome by events. And we know that because of the nature of the district court's permanent injunction. It did not enjoin those actions. It issued a wholly prospective prophylactic injunction against future agency action. Not the ultraviarious actions that motivated its exercise of authority, but hypothetical future actions. The court would not have had the authority to enter that kind of relief under even the APA. That's a broad programmatic challenge, hypothetical prophylactic relief. The APA would not have permitted it. And it makes no sense to say that plaintiffs can get this much broader form of relief where Congress has precluded APA review and they can only proceed ultraviarious. What do we make of the fact, though, that the preliminary injunction was in place, you know, from 2020 to 2022? I mean, could the plaintiffs have gone to the commission during that time to get relief, given that the preliminary injunction was in place? I think they definitely could have, Your Honor. There was nothing stopping them from doing that. If their complaint was that the Postal Service had engaged in an action that violated statutory obligations, they filed a lawsuit. They could have joined during that time. So what relief, what additional relief could the commission have granted? Well, it wouldn't have affected the commission's jurisdiction to consider their complaint. The commission's relief provisions are in Section 3662C and D. The commission has the authority to bring the Postal Service into compliance and to order whatever relief it determines necessary to fix issues of past compliance, as well as order fines and circumstances of deliberate noncompliance. So there were things that the PRC could have done. So the PI doesn't affect the commission's authority at all? I don't believe that it does, Your Honor, and I think it's, in fact, what Congress intended in setting up this scheme, that the PRC have the opportunity to use its expertise and assess whether the sole body that it regulates, the Postal Service, is acting consistent with its statutory requirements. The PI, by definition, turns on likelihood of success. Also that, Your Honor, yes. I think if the Postal Regulatory Commission had issued a decision on the complaint, that would have mooted the district court case, because at that point, it's the expert regulator that is determining on the merits whether or not an advisory opinion was required. And then an aggrieved party could have gotten reviews for it. Then their procedural claim would be moot. Correct, Your Honor. Because the commission would have, they would have asked for, you know, the advisory, well, there would have been a determination whether an advisory opinion was necessary. Correct, Your Honor. And if the PRC determined that an advisory opinion was necessary, it could have ordered the Postal Service to stop the changes that they had to go ask for an opinion about, to undo some of the changes that they had already made, and to wait for an advisory opinion. It was actually just another question. I mean, do the commission has that kind of quasi-injunctive authority to stop actions that are out of compliance with the law? It does, Your Honor. And the statute then in 3664 says that district courts have the authority to enforce the orders of the PRC. If there is an order from the PRC against the Postal Service telling them to stop some action or unwind some action, if the Postal Service does not comply, then parties can go to district court and ask the court to then enforce that against the Postal Service, which is the only way that Congress intended for district courts to be involved in these questions. Putting aside the fact that the Postal Service and the Postal Regulatory Commission are all part of the executive branch. So what about the opposite scenario? If in 2022 the challengers went to the Postal Regulatory Commission, as you think they should have, and they get the other resolution from the Postal Regulatory Commission, which is that actually there was no need to go to get an advisory opinion first, and then they want to seek judicial review of that, they could seek judicial review of that in our court. That's correct. And they would be seeking judicial review of that in our court in a context in which there's a preliminary injunction in place that enjoins the service from effectuating the very adjustments that then would be in play in the judicial review provision before our court? Yes, I believe that's right, Your Honor. And that seems fine? We would adjudicate the challenge to the Postal Regulatory Commission's resolution against the challengers, even though there's a preliminary injunction in place in favor of the challengers. I can't speak to what the government would do at that point with respect to the preliminary injunction. It's possible we would move to vacate. It's possible that if an appeal was available at that point, an appeal was taken, the cases could have been consolidated. But ultimately at that point in time— They'd be in two different courts. It would be in this court, Your Honor, if there was an appeal from a PI. Right, but the preliminary injunction would be—oh, I see. I'm not even talking about an appeal from the PI. I'm just talking about the fact that there's a preliminary injunction in place at the same time that then the challengers would come before our court to seek review of an adverse Postal Regulatory Commission determination. It's not uncommon for courts adjudicating similar issues to issue overlapping relief and for the parties to continue to pursue challenges to that relief on appeal in order to attempt to resolve the question. And if this court were to definitively determine that there was no issue, that there was no advisory opinion required, that would have a lot of weight. That would supersede it because this is the court that ultimately is supposed to hear all of these appeals from the Postal Regulatory Commission. I looked through the regulations and implementing Section 3662, and I did not see anything about expedition. You know, one of the arguments that's made is that there's this kind of this 90-day period by which the PRC kind of has to act. But that's, you know, that doesn't—that's not a floor. That's just a ceiling. They could act quicker, but I didn't see anything that said that, like, you could—these plaintiffs could go in before the PRC and seek an expedited, you know, consideration so that they could get their final order and appeal that or petition that before the D.C. Circuit. Because the other aspect of this is that the statute says that they can only seek review of final orders, right? So how does the absence, if I'm correct, the absence of any expedited regulation and the fact that they can only go to court when there's a final order or they can only go to district court to enforce an order, how should that play into our analysis of whether there's an adequate avenue for relief? So that's certainly a fact that the district court weighed heavily on, Your Honor. And, you know, for purposes of this appeal, we are not taking a position on whether or not that was appropriate at the time. But I do want to emphasize that if they are attempting to go to the commission and seek relief, if they've asked the commission to work expeditiously, I'm not aware of any specific regulation requiring the commission to, but if they are in an exigent circumstance and need relief faster than they can get it from the agency, then they can do what's common in administrative cases like that, where they can file a mandamus petition in this court at that point in time, explaining that they need the agency to act faster. And if they can meet the standards for mandamus, then they could get emergency relief under those exigent circumstances. But as of October of 2020, there were no exigent circumstances that would have made review not meaningful through the PRC. November, after the election, you mean? Sorry, 2022. As of October 2022, when the court exercised authority over these claims, there was no exigency and there was proper review before the PRC. If exigencies subsequently arose, they could consider mandamus at that point in time, but there's nothing in the record supporting that there were reasons why the PRC could not have acted. And, again, if you look at the permanent injunction, we know that the district court actually agreed with that because the district court didn't enjoin any of the actions that supported its review in the first place. It only issued this prophylactic injunction, which, again, would not have been available under the APA, was in excess of its authority under ultraviorous review. The only thing it could have done was to issue an injunction against the specific ultraviorous actions that it identified. Moreover, it was enjoining actions that themselves might not have been ultraviorous and also might not even have violated the statute. In addition, equitable principles limit relief necessary to redress the party's injuries. This injunction goes far beyond that. Plaintiffs never demonstrated that they had any future irreparable harm from future impending changes. In fact, they never sought this kind of injunction at all. This was what the district court issued sua sponte. Thank you, counsel. We'll give you a little time for rebuttal. Mr. Okosa. Good morning, your honors. May it please the court. Kwame Okosa for the plaintiffs. I want to start with the meaningful review prong of the ultraviorous test. And as an initial matter, I'll just point out that the Postal Service does not dispute that when the preliminary injunction issued in 2020, section 362 of the administrative process that provides for complaints could not provide an adequate relief for plaintiffs' ultraviorous claim. And because of that 90-day timeframe for adjudicating complaints, they've only argued that in the two years since the preliminary injunction was issued, that the pandemic had ended and the 2020 general election had concluded. But as the district court correctly noted, that the plaintiffs did not only claim injuries that were related to those events. For example, Plaintiff Hawaii testified that it had adopted universal voting, mail voting in 2019, well before the pandemic. And that authority did not lapse. It was fully in effect in 2022 when the permanent injunction was issued. New York likewise had expanded its mail voting opportunities. And I would just point out the district court issued that injunction in October of 2022. And so at the time, plaintiffs faced a real threat to the integrity of their elections because the mail voting was already underway for November 2022. And the Postal Service hasn't disputed the injuries plaintiffs faced to necessary public services that also depend on the mail, pandemic or no pandemic. For example, New York City testified that the mail's delayed, threatened 3 million New Yorkers with prolonging the time without benefits, reducing the net amount of benefits received overall, and causing applications to be received outside the statutorily set time period. And even short delays have major consequences. A 10-day window to request a hearing if a benefit is reduced or terminated. And if an applicant fails that 10-day window, they lose their benefits. And so there were several allegations like this related to the administration of state and local laws that depend on the mails in good times and bad, pandemic or no pandemic. So what about – so say it's December 2020. So I know we're focused on October 2022 because if I'm remembering right, that's when the summary judgment ruling was entered. It's kind of a random happenstance when the summary judgment ruling was entered. It came about when it did. That's the district court's discretion to enter it whenever it did. But for your purposes in terms of seeking something from the Postal Regulatory Commission, if we just go back to December 2020, then the election's over. And I want to get past the pandemic, so maybe I've got my dates wrong. But sometime in advance of October 22, was that not a time where you could have gone to the Postal Regulatory Commission? And yes, there's the 90 days, but you have – there's not the same kind of exigency in play. And to clarify, you're saying that the permanent injunction was issued in December of 2020? No, I'm just – I'm saying nothing's happened. Nothing's happened. The preliminary injunction is in place. The case is just pending. And then I think the government's submission is, well, during that period, at that point, the exigency had elapsed. And so you could have gone to the Postal Regulatory Commission. Well, as was discussed in the prior presentation, Your Honors, any matter before the Postal Regulatory Commission would have been moved because the challenge procedures had already been enjoined. And so it's not clear that the – What is – I'm not aware that the Postal Regulatory Commission – it's not an Article III body, so it doesn't have – Not in that sense, Your Honor, no. So is it actually true that the Postal Regulatory Commission would say this matter is moved and therefore we're not going to – Well, the Postal – the 3662 talks about bringing the Postal Service into compliance. Based on violations. But if they're currently in compliance with the postal statutes, there wouldn't necessarily be a basis to seek – to bring the complaint. And I would just also point out that the – Well, why wouldn't the basis be, you know, a court has said there's a likelihood of success, and so the commission is going to then bring, you know, work to bring the Postal Service into compliance in part with some of the findings of the PI? I don't – I'm not – my presentation here is not to say that a complaint could not have been brought necessarily. It could have been brought theoretically, but it wasn't necessarily required in order to pass ultra-virus review is the point that we're making here. Well, I mean, that's the question, though. If that was an adequate avenue, then you can't get ultra-virus review. The question is whether or not it was an adequate avenue at the time the summary judgment decision was made and at the time the permanent injunction was issued. And the question that the district court was faced at that time was that there was a knowledge – the knowledge that the preliminary injunction was falling away. And so plaintiffs were going to have no protection from last-minute changes to nationwide service that undermined their operations. And so the only thing that could be done at that point would be to issue a new injunction to protect plaintiff's rights ongoing. Only because plaintiffs didn't go to the commission, though. Maybe if you had gone in those two years to the commission, you could have gotten relief. Your Honor, it very well may be that the commission could have reviewed the complaints during that period, but it's not required to necessarily to bring the ultra-virus claim. Doesn't that concession undermine your ultra-virus claim? It doesn't, Your Honor, because the ultra-virus claim talks about – first of all, the relevant time period here is 2022, and we acknowledge that here. And so as I just laid out, the issue is what the court was making a decision about at that moment and what the risks were for the parties at that moment. And I also stress that this is a case about the Postal Service, and this is not in dispute, circumventing a clear command of Congress, enacting changes to nationwide service without giving due notice to the public. That only gets you so far because the way that I read this statute is that when Congress amended all of this in 2009, I guess, they set forth that the PRC could address and provide relief when the Postal Service violated its statute. I mean, it's explicit. It's what 3662 says. That's what the regulations implementing 3662 say. And in your jurisdictional hook of 39 U.S.C. 409 says, except as otherwise provided in this title, U.S. District Courts shall have original but not exclusive jurisdiction. Correct. How are we to give that except as otherwise provided in this title? How is that language supposed to do work if you say that, well, even though this title otherwise says you go to the PRC if the Postal Service operates outside of its jurisdiction, but we can just ignore that and go to the District Court instead? No, Your Honor, we're not asking to ignore that. I think the question is it's an implied intent standard. The question is whether or not Congress has implied that the alternative procedure is the procedure that must be taken in lieu of District Court jurisdiction. And I would just note 409A is an interesting provision in the sense that it specifically addresses the kind of claim that we brought here. It says that those claims can be brought in District Court. And that's an important textual – Why does it say these claims can be brought in District Court? It says except as otherwise provided in this title. And in this title, it provides a mechanism for you to bring this sort of claim before the PRC and then get review in the D.C. Circuit. That alternative procedure does not indicate or create the inference that Congress intended to cut off District Court jurisdiction. And there's several arguments in support of this. And one is that the question is whether or not the overall statutory scheme evinces an intent to cut off the District Court jurisdiction. The 3662 complaint process says may lodge a complaint with the Roe Post Regulatory Commission. The commission has up to 90 days to simply begin proceedings on a complaint. And if Congress intended for this body to adjudicate these sorts of high-stakes ultra-virus claims, it would not have created such a relaxed timeframe for review. 410A exempts APA review, but that doesn't create – But the 90 days isn't a floor. It's a ceiling. There's nothing that says that the commission has to wait 90 days to act. It's correct, Your Honor, in the sense that it says that the agency only has – or the commission has to begin proceedings before the 90 days or dismiss the proceedings. And I think what's important for our purposes is that there's no preliminary relief in that period. There's no possibility of expedited relief. Why is there no? I didn't see anything in your brief or in the District Court opinion cited to say that there's no avenue for preliminary relief or expedited relief. It's just ipsy-dixy. We say there isn't, so there isn't. Well, Your Honor, there's nothing in the regulations. The government has not disputed this argument that we've been raised in. And so I would just point out – I'll give an example. So the government points to several complaints that were brought before the commission that raised 361B. And, indeed, one of those complaints sought an emergency injunction. And it's just notable that in that complaint – this is on page 42 of their brief – the complaint was filed on March 15, 2022. And – oh, I'm sorry. It was – the emergency injunction was filed on April 30, 2014, and it wasn't adjudicated for more than a month later on June 5, 2014. So they have brought forth examples of situations where the commission has failed to adjudicate these things on an emergency basis. And we're not aware of any examples where they were able to successfully adjudicate these things on an emergency basis or anything requiring them to adjudicate these things on an emergency basis. What is the – what's the emergency if we're talking about post-2020 election? And so say we're in January 2021, December 2020, name your time. At that point, you could go to the Postal Regulatory Commission. And their normal 90-day clock is in effect. I mean, apparently they can move as fast as a month. You just cited an instance in which they moved as fast as a month. What is the exigency going on there? And I'm thinking of it in terms of ultraviarious. Is there adequate alternative mechanism? If the case is brought in December 2020, is it your view that even in that situation in December 2020, that it can be brought before the district, an ultraviarious action can be brought? Yes, Your Honor, it could be. And that's precisely because of the nature of the injuries, the irreparable harms that the plaintiffs are suffering. And I just laid those out. We're talking about a massive change to nationwide service that resulted in basically unprecedented drop in on-time delivery and delays that were having a constant and ongoing burden on plaintiffs' administrative processes. But what does irreparable harm have to do with it? The remedial authority is broad. I think some of these injuries. It says that the commission can order broad relief. That's what the rulemaking says. And you can enforce that order if you need to in the district court. Right. So I don't understand why the nature of the injuries means that you can't go before the PRC. I think it's the nature of the injuries. It's not clear that they can be compensated in any way. I mean, we're talking about millions of people who require the mails in order to obtain their public benefits, just as an example in New York City. The PRC could issue an order that says all of the same things that the district court said. It could not say that you must stop implementing the procedures while the matter is pending on an emergency basis. What statute or regulation tells me that they couldn't say that? There's nothing empowering them to make that determination. There's no example that's been brought forward of them making such a determination. The statute says that if the PRC finds a complaint to be justified, it shall order that the Postal Service take such action as the commission considers appropriate in order to achieve compliance. Tell me how that doesn't allow them to issue preliminary relief. Permanent relief, any other sort of relief that a court could? Your Honor, my argument is not that on the face of the statute it prohibits preliminary or emergency relief. It's just that it's not available. As Your Honor pointed out in the prior presentation, there's no regulations that provide for this. It's unclear that there are any examples for the commission that have provided for this sort of relief. And this is an emergency situation, especially when— In this case on that, there's a preliminary injunction in place.  So at that point, what is the emergency? Because the preliminary injunction is in place, and then the provisions can't be effectuated. So if the preliminary injunction is in place, and why doesn't that give carte blanche to go before the PRC, take your time? I mean, it's not going to be that much time because the PRC can act. And the PRC definitely has the remedies available to it that would serve your client's interests because it can say to the USPS, you can't do this because you have to go get the advisory opinion first. You didn't do that, so stop this. I don't think you dispute that the PRC could do this. We don't dispute that. And with the preliminary injunction in place as a backdrop, then why doesn't that in itself kind of deals with the emergency? Because you've got the relief from the district court. Hold everything in place. These provisions can't be effectuated. And then it gives you breathing space to go to the PRC. I see my time has expired. I would just say we don't have an argument here that during the preliminary injunction, there was an ongoing emergency because all of these provisions had been enjoined. I think the problem there is that the preliminary injunction would have made it completely unclear that 3662 would have been able to provide any relief whatsoever. And whether or not it could have been reviewable in court following an order from the commission, because everything would have been enjoined and there would be no controversy before the court. Based on a likelihood standard, not on a— Based on the preliminary injunction standard? Correct, Your Honor. That would be the—but in any case, there would be no harm ongoing necessarily to the plaintiffs as a result of the changes in the Postal Services. Yes. Any further questions? There are no further questions. We ask that you confirm. Thank you. Thank you, Your Honor. Chief Maestro will give you two minutes for rebuttal. Thank you, Your Honor. I have three points that I'd like to try to get to. First, with respect to some of the colloquies that were happening earlier, I just wanted to emphasize that although arguments against jurisdiction cannot be forfeited, arguments in favor of jurisdiction can. And so we heard my friend on the other side say that they don't dispute the relevant time period for the inquiry of whether there was meaningful review is 2022. And so the court can follow that concession in this case. And if you look at 2022, the second point, at that point in time, the case was fundamentally different than it was when it was filed in 2020. At that point, plaintiffs wanted an injunction or support an injunction against future actions of the Postal Service, not the specific ultraviarious actions that justified the court's exercise of authority. And as this court has said, ultraviarious review is for the narrow purpose of enjoining that agency error that is so extreme that it requires the immediate intervention of an equity court. Those actions, the district court found, they were specific actions that happened in 2020. In 2022, those actions were no longer on the table. Plaintiffs wanted relief against future actions. That's not what ultraviarious review is about. And in addition, that kind of relief wouldn't even have been available under the APA, and this is not an APA case. Congress expressly precluded an APA cause of action here. And finally, I heard my friend on the other side say that even in December 2020, it would not have been appropriate to require them to go to the PRC because slowdowns with the mail continued to cause harms to them at that point in time. But that's the kind of argument that any user of the mail could always make, that if something the Postal Service is doing is slowing the mail in some way that's harming their use of the mail, the result of that would be that claims would never be channeled to the Postal Regulatory Commission. And we know that that's what Congress intended by setting up this specialized scheme that ensures that the Postal Service's expert regulator has a role in saying whether or not they're complying with the statute, and then that question would ultimately be reviewed by this court. I see that my time is up. If there are no questions. Thank you, counsel. Thank you to both counsel. We'll take this case under submission.
judges: Srinivasan; Wilkins; Rao